## Thomas Austin *versus* Isaac Stevens.

The husband of a tenant for life is not regarded as holding the land adversely to the title of the reversioners during the continuance of his legal right to the occupation thereof; but if he continues in possession after the determination of that estate, claiming it as his own, he is then to be considered as holding by an adverse title.

Under the provisions of Rev. St. c. 91, § 1, and c. 145, § 6, the demandant may maintain a writ of entry, declaring on his own seizin, when he has a deed of the demanded premises, duly acknowledged and recorded, from the owner thereof, if his grantor could have maintained the action; although such grantor was disseized thereof by the tenant at the time of the execution and delivery of the deed.

By the common law, permanent improvements made and annexed to the freehold by a tenant for life or years, became a part of the estate of inheritance. And such was the law in this State, prior to the act of 1843, c. 6, additional to c. 145 of Rev. St.

The legislative department of the government may, prospectively, determine that a tenant for life shall have the right to make permanent improvements upon the estate; and that he, or those claiming under him, shall be entitled to receive compensation for the value of them, to be ascertained in such manner as it may judge best.

If the St. 1843, c. 6, must be construed to be applicable to a case where by the laws of the State, the improvements made by the tenant for life had been incorporated into and become a part of the reversionary interest, and were the absolute property of the reversioner; and to authorize one, who had no title to the improvements, for many months before the passage of the act, to obtain the value of them from the grantee of those who during that time had, by the existing laws, a perfect title to them; so much of the act, as attempts to do this, must be in direct conflict with those provisions of the constitution of this State, which secure to each citizen the right to possess and preserve his private property, unless it be required for the public use; and is therefore wholly inoperative.

In a writ of entry dated Oct. 28, 1844, the demandant, declaring on his own seizin within twenty years and alleging a disseizin by the tenant, demanded an undivided portion of a farm in Windham. The general issue was pleaded, with a brief statement, wherein the tenant requested that the jury would inquire, and by their verdict ascertain the increased value of the premises by reason of the improvements made thereon by him.

At the trial before WHITMAN C. J. the demandant proved title in Jonathan Varney; the marriage of Varney with Dorothy Sanborn; the will of Varney; his death; the approval of his will in the Probate Court, Sept. 10, 1806, wherein he devised to said Dorothy " the whole of my estate, real and personal, during her natural life;" the marriage of said Dorothy afterwards with Stevens, the tenant; and that they lived upon the premises until her death, on April 4, 1841.

The reversion was not devised by Jonathan Varney; and the demandant read in evidence deeds, duly acknowledged and recorded, made since the decease of said Dorothy, from heirs at law of Jonathan Varney to the demandant, of about four-ninths of the farm.

The tenant then offered in evidence deeds from the collector of United States direct taxes to Howe, but made no proof of any preliminary proceedings, showing authority to make the deed; from Howe to Staples; from Stevens and wife to Staples; and from Staples to Stevens and wife. The counsel for the demandant objected to the admission of each of these deeds; and the objections were sustained by the presiding Judge, and the deeds were excluded.

The tenant then offered " evidence to prove the increased value of the premises by reason of the improvements made on the same by himself, and that they were proper and judicious under the circumstances of the case; and that he had been in the sole possession of the premises, claiming title in himself exclusively, since the date of the deed of Staples to him in January, 1819, and that since that time he claimed the premises adversely to the reversioners. This evidence was objected to by the demandant, and excluded by the presiding Judge.

The tenant contended, that the demandant could not, under the facts, sustain his action, because that at the time he took his deed from the heirs of Jonathan Varney, the tenant was in possession of the premises, claiming title thereto. This objection was overruled by the presiding Judge.

The Judge ruled, that the deed from Staples to Stevens gave the latter no title to the land as against the reversioners

or their grantees, and did not entitle the tenant to claim for his improvement of the estate against them, or either of them; and could not be set up as available against the title proved by the demandant, as derived by him under the deeds of the heirs and reversioners of the estate demanded.

If the rulings were correct, the tenant was to be defaulted; otherwise the cause was to stand for trial.

The case was argued in writing.

The argument for the tenant was as follows, by

*W. P. Preble & Son.*

It appears from the case reserved, that Dorothy Varney, widow of Jonathan Varney, became possessed of the demanded premises by virtue of a will, approved Sept. 10, 1806, whereby her deceased husband bequeathed the same to her during her natural life. It further appears that the defendant afterward married the said widow and thereby became tenant, for the life of his said wife, of the demanded premises. It further appears that the wife died April 4th, 1841. It also appears that Wood-bury Storer, acting as collector of the direct tax imposed by the government of the United States, on the alleged failure of the tenant to pay the tax assessed on said premises, conveyed the same by deed to Daniel Howe, dated August 11, 1818, and recorded the same day. It also appeared that said Howe on the same eleventh day of August, 1818, by a deed duly acknowledged and recorded, conveyed the same premises to Joseph Staples. It also appeared, that the defendant and his wife Dorothy by deed, dated Nov. 4, 1818, and recorded Sept. 8, 1844, conveyed all their right in the premises to said Joseph Staples. It further appeared that said Joseph Staples by his deed dated January 9, 1819, duly acknowledged and recorded the same day, conveyed to the defendant the demanded premises. It further appears, that the defendant has been in the sole possession of the premises, occupying and improving them as his own, claiming title in himself exclusively and adversely to the supposed reversioners since the said 9th day of January, 1819, the date of said Joseph Staples' deed to the defendant. That, since the said time, he has increased the value of the

demanded premises by improvements made on the same by himself, and that such improvements were proper and judicious under the circumstances of the case. It further appears, that after the death of the said Dorothy and before any entry made by the heirs in reversion of Jonathan Varney, the demandant purchased of the supposed heirs of the reversion of the premises, by deed duly executed and recorded, about four ninths of the demanded premises, and thereupon on 28th Oct. 1844, sued out the present writ of entry, counting on his own seizin within twenty years, and a disseizin by this defendant.

The first objection to the plaintiff's maintaining the present suit, is, that the defendant at the time when the said supposed heirs of the reversion undertook to convey the premises to the demandant, was in the sole and exclusive possession thereof claiming them as his own, occupying them under a deed from Joseph Staples, duly acknowledged and recorded, and under a possession avowedly adverse to any claim of the heirs. The Rev. Stat. c. 145, § 6, does not authorize the purchasing up of dormant titles. It is still necessary that the grantor should be in possession of the premises conveyed at the time of conveying them, either actually or constructively and in contemplation of law. The statute referred to, dispenses with an actual entry when there was a right of entry, but only in the case of the person who had the right of entry, and not in the case of his grantee. If the statute should be construed otherwise, the whole law in regard to the purchase of dormant titles is necessarily repealed by implication.

In case of an actual disseizin, the disseizor has a right of entry at any time within twenty years, and he can maintain no action after a lapse of twenty years; it follows therefore, that if the grantor, having a right of entry merely, there being a person in the actual possession and improvement and holding the premises adversely, can convey the title to a third person, without entry, and that third person without entry can maintain an action, declaring on his own seizin, the whole law of real estate by virtue of the sixth section referred to, has undergone a radical change, and every person is at liberty to speculate in dormant titles, who chooses to embark in it.

The second objection to the ruling of the Judge, is, that at all events, the defendant is entitled to his betterments. By the deed of the defendant and his wife to Staples of Nov. 4, 1818, the wife ceased to have any interest in the premises.

The defendant, at the time of the commencement of the plaintiff's suit, had been in the possession of the demanded premises, for more than twenty years, claiming them as his own. Now it is contended that under section 23d of the Rev. Stat. already referred to, the defendant is entitled to his betterments, for he has been in actual possession claiming them for more than six successive years before the commencement of the action. In connection with this branch of the case the Court is referred to the additional act to chapter 145, of the Rev. Stat. approved March 4, 1843.

If the deed from Staples of Jan. 9, 1819, should be construed as conveying to Stevens, the defendant, only the life estate in the premises which formerly appertained to Dorothy Stevens, then the defendant is the assignee or grantee by deed from the tenant of the life estate, and falls within the provisions of the additional act referred to, provided his buildings and improvements, erected and made by the defendant, were proper and judicious under the circumstances of the case. Now the case expressly finds, the improvements made by the defendant were of that character.

*Fessenden, Deblois & Fessenden*, in their argument for the demandant, contended : —

That the main questions arising on the report of this case, were decided in the case, *Varney* v. *Stevens*, 22 Maine R. 331.

The deed of Stevens and wife to Staples, and his deed back to them, had no effect whatever upon the rights of the reversioners. They were mere naked releases, for a nominal consideration, passing the life estate to Staples and from him back to them. The deed from Stevens and wife to Staples could not operate as a forfeiture of their life estate, for that only was conveyed. Having failed to accomplish his object by fraud, he attempts to do it by procuring an act of the legislature to give him betterments, which did not belong to him, as was decided in the case already cited.

The statute of March 4, 1843, cited and relied on by the counsel for the tenant, if applicable to the present case, is unconstitutional and void.

On the decease of the widow of Jonathan Varney, his heirs at law became seized of the whole estate, in fee simple, unencumbered by any legal or equitable claim to betterments or improvements made thereon.   They had vested rights to the whole estate ; and no law passed by the legislature, after their rights had so vested, could divest them.   The direct effect would be, to take the property from one man and transfer it to another by an act of legislation.   And this the legislature cannot do.   Constitution of Maine, art. 3, § 1, 2, — art. 6, § 1, — art. 4, § 1, — art. 1, § 21 ; *Ken. Pur.* v. *Laboree,* 2 Greenl. 275 ; *Lewis* v. *Webb,* 3 Greenl. 326 ; *Lewiston* v. *Durham,* 4 Greenl. 140 ; *Oriental Bank* v. *Freeze,* 18 Maine R. 109 ; *Society, &c.* v. *Wheeler,* 2 Gallison, 143 ; *Dash* v. *Van Kleeck,* 7 Johns. R. 477 ; 3 Dall. 386 ; 11 Mass. R. 396.

On the death of the tenant for life, the defendant's right wholly ceased ; and any improvements made by him upon the premises were but a part of the estate ; and as such belonged to the reversioners.   *New Gloucester School Fund* v. *Bradbury,* 2 Fairf. 118 ; *Runey* v. *Edmands,* 15 Mass. R. 291 ; *Varney* v. *Stevens,* before cited.

After the marriage the tenant had a legal right to the enjoyment of the estate in right of his wife until her death, and did not hold adversely to the reversioners.   They had no power to enforce their rights until her death.   To entitle any one to betterments, there must be a holding adversely to the owner. *Varney* v. *Stevens,* 22 Maine R. 331 ; *Bacon* v. *Callender,* 6 Mass. R. 303 ; *Mason* v. *Richards,* 15 Pick. 141 ; *Larcom* v. *Cheever,* 16 Pick. 260.

The opinion of the Court was delivered on April 24, 1846, as drawn up by

Shepley J. — This is a writ of entry by which the possession of certain lands in Windham is demanded.   A farm, comprising the premises, was formerly owned by Jonathan

Varney, who by his will, proved on September 10, 1806, devised the same to his wife during her natural life. She was afterward married to the tenant, and continued to reside with him upon it until her death on April 4, 1841. It was sold to Daniel Howe by a collector of direct taxes assessed under a law of the United States, and was conveyed to him on August 11, 1818. He on the same day conveyed his right to it by a deed of release to Joseph Staples. The tenant and his wife by a like deed, conveyed all their right to it to Staples, on the fourth day of November following. And Staples by a like deed, conveyed all his rights to the tenant on Jan. 9, 1819.

The legal effect of all these proceedings, so far as the rights of the tenant could be affected by them, was determined in the case of *Varney* v. *Stevens,* 22 Maine R. 331. In that case it was decided, that he must be considered to have been in possession of an estate for life under a legal title to it, and that he could not therefore be regarded as holding the estate adversely to the title of the reversioners during the life of his wife, by virtue of a possession and improvement. Since the determination of that estate, he must be considered as claiming to hold by an adverse title. As the demandant claims an undivided portion of the estate by conveyances from some of the heirs at law, made while they were thus disseized by the tenant, he could not according to the rules of the common law maintain this action. The statute, c. 145, § 6, provides, that " the demandant shall not be required to prove an actual entry under his title, but proof, that he is entitled to such an estate in the premises, as he claims, as heir, devisee, purchaser, or otherwise, and also, that he has a right of entry therein, shall be deemed sufficient proof of the seizin alleged in the declaration." This section alone would not authorize the demandant to maintain the action. He could not prove, that he had a right of entry. For a conveyance made by a person disseized to another not in possession, would not, by the rules of the common law, convey even a right of entry. But those rules have in this respect been changed by statute, c. 91, § 1, which provides; " when any person shall make a deed of any lands or other

real estate owned by him in severalty, or in common with others, acknowledged and recorded in the manner prescribed in this chapter, whether at the time of the execution and delivery of the deed he is seized or not seized of such lands or estate, but to or for which he has a right of entry, such lands or estate, or all the title or interest, which the grantor has in the same, shall pass by such deed of conveyance as effectually, as if the grantor was at the time of the conveyance, seized of the same." However great may be the mischiefs anticipated by such a change of the common law, as will permit dormant titles to be purchased from persons disseized, who have a right of entry, it has been the pleasure of the legislature thus to authorize it, by language too clear and decisive to admit of any different construction. The heirs at law of Varney, from the facts presented, appear to have had a right of entry into the premises, when the demandant obtained conveyances from some of them, and he thereby brings his case within the provisions of the statute, c. 145, § 6, by which he may maintain the action by proof of a right of entry, without any proof of an actual entry.

The tenant offered to prove, that the estate had been increased in value by proper and judicious improvements made upon it by him. By the act of March 4, 1843, the sections of statute, c. 145, from the 26th to the 45th inclusive, except the 35th, are made applicable " to all real actions now pending or hereafter brought by a reversioner or a remainder man, or his or their assigns, after a termination of a tenancy in dower, or of any other life estate, against the assignee or grantee by deed of or from the tenant of the life estate, or against the heirs at law, or legal representatives of such tenant." The effect of this legislation would seem to be to authorize the grantees, heirs, or legal representatives, of a tenant for life to claim and obtain compensation for the increased value of the premises by reason of all proper and judicious improvements made upon them by him or them, by the proceedings in an action brought to recover possession of them, although such tenant for life, or his grantee, may not have held the premises by an adverse

possession, or for any particular period of time. And to do it even in cases, where by the existing laws those improvements may have become a part of the estate of inheritance before the passage of the act of March 4, 1843. For the act makes those sections applicable to all such actions between such parties without regard to the facts or circumstances, which have occurred in any particular case before its enactment.

By the common law permanent improvements made and annexed to the freehold, by a tenant for life or years, became a part of the estate of inheritance. *Elwes* v. *Mann*, 3 East, 38. The act of March 4, 1843, appears to have been passed with a knowledge, that such was the law. For if the improvements, to which it refers, were not so connected with the freehold, that they became part of the estate, the person making them, or his assignee or legal representative, would have been entitled to the benefit of them by removing them without any statute provision.

The legislative department of the government may by law determine, that a tenant for life shall have the right to make permanent improvements upon the estate, and that he or those claiming under him shall be entitled to receive compensation for the value of them to be ascertained in such mode, as it may judge best. In many conceivable cases such statute provisions may be alike desirable for the promotion of the best interests of the parties entitled to the estate and for the public welfare. Courts of equity of general jurisdiction have been so sensible of this, that they have at times interposed to aid or permit such improvements to be made by a tenant for life, or to make compensation for them. In the case of *Hibbert* v. *Cook*, 1 Sim. & Stu. 552, the vice chancellor ordered compensation to be made to a widow, who was a devisee for life, out of her former husband's personal estate for expenses incurred by her in finishing a new mansion house on the devised estate, which house the testator had *nearly* completed before his death. But he refused to make any compensation for repairs, which she had made upon it in consequence of an injury by the dry rot. While the lord chancellor would

Austin *v.* Stevens.

not, in the case of *Nairn* v. *Majoribanks*, 3 Russ. 582, authorize a new roof to be put upon a mansion house by a tenant for life at the expense of the testator's estate, even if it should appear to be for the benefit of all parties interested in the estate. In the case of *Cogswell* v. *Cogswell*, 2 Edw. 231, it appeared, that city lots with buildings upon them had been devised for life. That ten feet were taken from the fronts of the lots after the death of the testator to widen the street, by which the buildings upon the lots were destroyed. The Court directed the executors to appropriate a sum out of the residuary personal estate to rebuild upon them, reserving an interest of six per cent. upon the cost, with a reasonable sum for depreciation and repair, to be paid out of the rents during the life estate.

While the exercise of the legislative power is admitted to be both constitutional and expedient, to determine what shall be the respective rights and duties of tenants for life, and of reversioners in relation to improvements made during the continuance of the estate for life, it will not follow, that their rights to such improvements can be altered or changed, after they have been fixed and established by the laws existing at the time, when the life estate falls. The right of the legislative department to authorize a person holding lands by possession and improvement, to claim and obtain compensation for his improvements has been admitted. But if he should voluntarily abandon his improvements with the land, and they should by the existing laws, as they would now do, become the property of the owner of the estate, would any intelligent person claim for the legislature the constitutional power to deprive the owner of any portion of his estate except for public use? Although there is a similarity between the grantee of a tenant for life and one holding by possession and improvement in this, that the tenant in each case is found in possession of the premises; yet there is an essential distinction between them at common law in this, that by the determination of the estate for life an event has occurred, by which the rights of a grantee of a tenant for

life to improvements have been determined, while no event attended by such consequences has occurred to affect the rights of one holding by possession and improvement. So an act of the legislature might constitutionally determine, what should be the rights of married women to dower in the estates of their husbands; and might deprive them of their right to claim it on the decease of their husbands. But should a widow, by the existing laws, become entitled to dower in the estate of a deceased husband, no one would insist, that she could be deprived of that dower by an act of the legislature.

In this case, by the laws of the State, as they were at the time of the death of the tenant for life, on April 4, 1841, the permanent improvements made by the person in possession of the estate for life became absolutely incorporated into, and a part of, the reversionary estate. Those improvements had continued to be an integral part of that estate for twenty-three months before the passage of the act of March 4, 1843. If that act must be construed to be applicable to such a case, and to authorize one, who had no title to the improvements for nearly two years before its passage, to obtain the value of them from the grantee of those, who during that time had by the existing laws a perfect title to them, it is manifest, that so much of the act as attempts to do this, must be in direct conflict with those provisions of the Constitution of this State, which secure to each citizen the right to possess and preserve his private property, unless it be required for the public use.

*The tenant is to be defaulted.*