NEWTON *v.* THORNTON and another, Receivers, etc.

Filed January 8, 1885.

EJECTMENT — RETROSPECTIVE LAW—VESTED RIGHTS— IMPROVEMENTS ON PROP-
ERTY.
> Where an action of ejectment is brought to recover the possession of land,
> and the defendant, under section 3 of the act of 1878, (Prince's St. 486,) claims
> the value of improvements which he had erected thereon prior to the passage
> of the act, the owner, by vested right, is entitled to recover the improvements
> as well as the land, and the statute, so far as it attempts to divest that right, is
> void.[1]

Error to the First judicial district court, San Miguel county.

*W. D. Lee* and *S. M. Barnes,* for plaintiff in error.

*Frank Springer* and *T. B. Catron,* for defendants in error.

AXTELL, C. J.   This is a suit in ejectment which was begun at the
August term, 1880, of the district court of Colfax county, by the de-
fendants in error, to recover possession of certain real estate which
was held by plaintiff in error.   To the declaration the defendant be-
low pleaded the general issue, and a special plea setting up the fact
that he had made large and valuable improvements on the real estate
in question, and praying judgment against the plaintiffs below for
the value of said improvements, in case said plaintiffs were entitled
to a judgment for the possession of the property.   The venue of the
case was subsequently changed to the district court of the county of
San Miguel, and came on for trial in the latter court at the August
term, 1881.   Upon the trial, the defendant appears to have offered
no evidence whatever as to the right to the possession of the prop-
erty, confining his evidence solely to proof as to the value of his im-
provements.   The jury returned a verdict finding the defendant guilty,
assessing the rents and profits of the property in question during
the time it had been held by defendant at $300, and the value of the
improvements made by the defendant thereon at $1,050.   Upon this
verdict plaintiffs moved the court to enter judgment for the posses-
sion of the property, and $300, while the defendant moved for a judg-
ment against the plaintiffs for $750, being for the value of the im-
provements in excess of the rents and profits.   The court refused both
of these motions, and gave judgment in favor of the plaintiffs for the
possession of the property, and costs.   Both parties excepted to the
ruling of the court, and have had their exceptions embodied in the
record which is now before us.

We have two statutes in this territory relative to improvements
made upon real estate by defendants in this class of cases.   The first
is the act of 1858, (Prince's St. 153,) which touches only those cases
where "the defendant, or tenant in possession, in such suit shall have

---

[1] See note at end of case.

title of the premises in dispute, either by grants from the governments of Spain, Mexico, or the United States, or deed of conveyance founded upon a grant or entry for the same." This statute has no bearing upon this case, as it nowhere alleged in the pleadings, nor set up in evidence, that the defendant below had title to the premises in dispute, either by grant, or deed of conveyance founded on a grant, or entry for the same. The defendant below evidently relied upon section 3 of the other statute on this subject, an act of 1878, (Prince's St. 486,) which section is as follows:

"When any person or his assignors may have heretofore made, or may hereafter make, any valuable improvements on any lands, and he or his assignors have been, or may hereafter be, deprived of the possession of said improvements in any manner whatever, he shall have the right, either in an action of ejectment which may have been brought against him for the possession, or by an appropriate action at any time thereafter within ten years, to have the value of the said improvements assessed in his favor as of the date he was so deprived of the possession thereof; and the said value so assessed shall be a lien upon the said land and improvements, and all other lands of the person who so deprived him of the possession thereof, situate in the same county, until paid; but no improvements shall be assessed which may or shall have been made after the service of summons in an action of ejectment on him in favor of the person against whom he seeks to have the said value assessed for said improvements."

At common law, any person making improvements on the lands of another of such a nature that they became part of the realty, lost his time and labor, and the improvements inured to the benefit of the owner of the land. On behalf of the defendants in error it is contended that, so far as this case is concerned, the common law was unchanged up to 1878; that all the improvements claimed by the plaintiff in error having been made prior to 1878, they acquired a vested right in those improvements, and that, so far as this statute attempts to divest that right, it is void. The plaintiff in error insists, on page 6 of his printed brief, that this act has no retrospective effect, and this, it seems to us, concedes the point made by defendants in error. But plaintiff in error further insists that even if it is retrospective, it is not therefore void, because the constitution of the United States does not prohibit the legislature from passing retrospective acts. This is undoubtedly true, as a general proposition; but it is also undoubtedly true that no statute, whether retroactive in its terms or not, should be so construed as to injuriously affect any vested rights. In this case, as the record comes up to us, it cannot be contended for a moment that the plaintiff in error would be entitled to any compensation for his improvements, were it not for the statute of 1878. It appears, from his own evidence, that all of the improvements for which he asks judgment were made in 1876 and 1877. It seems clear to us that at the time the act of 1878 was passed, these improvements were absolutely the property of the owner of the land, and no legislature can take or destroy private property for private use by statutory enactments; and, so far as this statute

attempts anything of that kind, it is clearly void. *Bay* v. *Gage*, 36 Barb. 447; *Ely* v. *Holton*, 15 N. Y. 595; *Austin* v. *Stevens*, 24 Me. 520; *Society, etc.,* v. *Wheeler*, 2 Gall. 140 *et seq.; Albertson* v. *Landon*, 42 Conn. 209; *Carver* v. *Jackson*, 4 Pet. 100; *Dash* v. *Van Kleeck*, 7 Johns. 477; *Lane* v. *Nelson*, 79 Pa. St. 407; *Brown* v. *Hummel*, 6 Pa. St. 86.

In the case of *Lane* v. *Nelson*, above cited, the court said: "It is settled by a current of authority that the legislature cannot, by an arbitrary edict, take the property of one man and give it to another." And again: "To exercise judicial powers is not within the legitimate scope of legislative functions; and when vested rights are divested by acts of that character, they will, and ought to be, adjudged inoperative, null, and void." In the case of *Society, etc.,* v. *Wheeler*, 2 Gall. 143, the court says:

"It is difficult to perceive the foundation of the equitable or moral obligation which should compel a party to pay for improvements that he had never authorized, and which originated in a tort. If every man ought to have the fruits of his own labor, that principle can apply only to a case where the labor has been lawfully applied, and the other party has voluntarily accepted those fruits without reference to any exercise of his own rights; for if, in order to avail himself of his own vested rights, and use his own property, it be necessary to use the improvements wrongfully made by another, it would be strange to hold that a wrong should prevail against a lawful exercise of the right of property. In the case of a tortious confusion of goods, the common law gives the sole property to the other party without any compensation; yet the equity in such a case, where the shares might be distinguished, would seem much stronger than in the present case. There would also have been plausibility in the argument if the statute had confined itself to visible erections made by the tenant, who had been six years in possession under a supposed legal title. But the improvements may be altogether in the soil, and even made by the original wrong-doer, and yet the compensation must be allowed, and they may be just such improvements as, in the case of a rightful tenancy, would, at common law, be deemed waste. It is sufficient, however, that no such equitable right as is now contended for is recognized in law; and, indeed, it has been deemed so far destitute of moral obligation that even an express promise to pay for improvements made by a person coming in under a defective title has been held a *nude pact*. As to the argument that the demandants had no vested title in the improvements until a recovery, it is clearly unfounded in law. In respect to the amelioration of the soil by labor, (which is embraced both by the statute and the verdict,) it would be absurd to contend that the amelioration was a thing separate from the soil, and capable of a distinct ownership. In respect to erections, the common law is clear that everything permanently annexed to the freehold passes with the title of the land, and vests with it. And here lies the distinction as to fixtures during a lease. They are not deemed to be permanently annexed to the soil, and may, therefore, well be removed; and so, indeed, would the law be as to like fixtures by a mere trespasser. The right, then, to permit erections follows as a necessary and inseparable incident to the right of the soil, and is not acquired, but is merely reduced into possession by a subsequent suit. On the whole, if the statute must have a construction which will embrace the case at bar, with whatever reluctance it may be declared, in my judgment it is unconstitutional, inasmuch as it divests a vested right of the demandants, and vests a new right in the tenants, upon considerations altogether past and gone."

Citations and quotations might be multiplied indefinitely to the same effect. The authorities on this point are unanimous, conclusive, and most emphatic. This practically disposes of the case. There are some other points made and exceptions taken by defendants in error which are unimportant, and on many of them it would be impossible for the court to pass, as those parts of the record to which they refer are not sufficiently before us. The judgment of the court is that the judgment of the court below be affirmed.

WILSON and BELL, JJ., concur.

NOTE.

VESTED RIGHTS. The doctrine announced in the principal case is controverted by an *Arkansas* decision, where just the opposite conclusion is reached. It is there said that the owner's common-law right to recover the improvements with the land is not a vested right, and that the statute allowing a defendant compensation for permanent improvements is remedial, and applies to improvements made before as well as those made after its passage. Beard v. Dansty, 2 S. W. Rep. 701. This case goes so far as to hold that the fact that the action was pending when the statute was passed is an immaterial circumstance, and that the plaintiff has no "vested right" in respect of the improvements until he recovers judgment. These diametrically opposed decisions illustrate the divergent views held by different courts on the subject of "vested rights." The principal case proceeds upon the theory that unauthorized improvements put upon the land vest absolutely in the rightful owner from the time they are made, whereas the *Arkansas* case maintains that the rightful owner has only a right of action for the land, with an ancillary right to recover the improvements also, provided no change is made in the law before judgment. It is said there that the bringing of a suit does not entitle a party to any particular decision, but his case must be determined by the law as it stands at the time of the judgment. "The right to a particular remedy is not a vested right. This is the general rule, and the exceptions are of those peculiar cases in which the remedy is a part of the right itself." Cooley, Const. Lim. (6th Ed.) 442.

In *New Jersey*, it has been held that a statute authorizing suit and execution against a husband for the debt of his wife, arising out of her contract made without his assent, is void as to marriages contracted before its passage, because it interferes with a vested right acquired by the antecedent contract of marriage. Marx v. Addoms, 12 Atl. Rep. 909. In *California*, it has been decided that a police officer has no vested right in a bounty given by statute in case of his death, and that the statute may be constitutionally repealed before the death of any one who became an officer after its enactment. Pennie v. Reis, 22 Pac. Rep. 176. An act providing that no sewer shall be permitted to empty into any stream within three miles above a point from which a water supply is obtained does not deprive a town of a vested right, even though it may have a sewer partly constructed at the time of the passage of the act. Water-Supply Co. v. City of Potwin Place, (Kan.) 23 Pac. Rep. 578. An act declaring that tax-deeds shall only be set aside on condition that the claimant pays to the person holding the deed all taxes and legal costs cannot be given a retrospective operation, as that would interfere with vested rights. Riverside Co. v. Townsend, (Ill.) 9 N. E. Rep. 65. The repeal of a statute exempting a testator's real estate from sale for the payment of his debts, after the lapse of three years from his death, does not affect estates already exempted by the lapse of that time, for such exemption is then a vested right. Gates v. Shugrue, (Minn.) 29 N. W. Rep. 57. The right to foreclose a mortgage under a power of sale contained in it pursuant to a statute in force at the time of its execution cannot be taken away by subsequent legislation. O'Brien v. Kreuz, (Minn.) 30 N. W. Rep. 458. A county has no vested right in the legislative appropriation of the funds arising from the sale of licenses to the support of the county poor. Richland Co. v. Village, (Wis.) 18 N. W. Rep. 497. A municipality acquires a vested right in taxes levied, and cannot be constitutionally deprived of them by a retrospective law. Independent Dist. of Union v. Independent Dist. of Cedar Rapids, (Iowa,) 17 N. W. Rep. 895. An act permitting judgments obtained by perjury or fraud to be set aside by a proper proceeding brought within three years applies to judgments recovered after its passage in suits commenced prior thereto, Spooner v. Spooner, (Minn.) 1 N. W. Rep. 838.

EJECTMENT—MESNE PROFITS—IMPROVEMENTS—RIGHTS OF BONA FIDE OCCUPANT. At common law, the rightful owner was under no obligation to pay for unauthorized improvements put upon his property by another, whether a *bona fide* claimant under color of title or a mere trespasser. This doctrine came to be modified in equity, where a *bona fide* claimant was permitted to offset the value of lasting improvements against

the mesne rents and profits or damages. Putnam v. Tyler, (Pa.) 12 Atl. Rep. 43; Sedg. & W. Tr. Title Land, § 691. It is sometimes said in the cases that at common law the permanent improvements could be set off against plaintiff's claim for rents or damages, Kerret v. Nicholas, (Ala.) 6 South. Rep. 698; but this arises from an inaccurate apprehension of the meaning of the term "common law," and is authority only for the correct proposition that the courts of law in many jurisdictions have, without the intervention of any statute, ingrafted the equitable doctrine on the common law, Putnam v. Tyler, supra. The statutes in regard to the allowance of the value of permanent improvements are very similar in their general outlines and requirements, so that the decisions of each state are valuable in the others.

NOTICE OF ADVERSE CLAIM. In *Arkansas*, under a statute giving compensation for permanent improvements made by an occupant "believing himself to be the owner," it is held that constructive notice, as a recorded deed of a superior title, does not deprive a *bona fide* occupant under color of title of his right to compensation for improvements. Beard v. Dansty, 2 S. W. Rep. 701; Shepherd v. Jernigan, 10 S. W. Rep. 765. But in *West Virginia*, where the statute allows compensation for improvements made "at a time when there was reason to believe" that the occupant's title was good, it has been determined that constructive notice of an adverse claim, as a prior recorded deed to the same land, is sufficient to apprise the occupant of an outstanding adverse title, and to defeat his claim for compensation for improvements, though he had no actual notice of such adverse title. Dawson v. Grow, 1 S. E. Rep. 564; Hall v. Hall, 5 S. E. Rep. 260. In *North Carolina*, however, under an exactly similar statute, it is held that such constructive notice of a superior title does not affect the defendant's right to recover the value of his improvements, and that it is a question of fact to be determined by the jury whether or not the occupant had "reason to believe" that his title was good. Railway Co. v. McCaskill, 4 S. E. Rep. 468. It has been decided that a defendant, who, with knowledge of the terms of a trust-deed, received a conveyance from the trustee in breach of trust, is entitled to compensation for improvements, especially in light of the fact that no objection was made for years by the *cestui que trust* to his title, which, under the advice of counsel, he supposed to be good. Rabb v. Flenniken, (S. C.) 10 S. E. Rep. 943.

CHARACTER OF OCCUPANT'S POSSESSION. A defendant who takes possession of a portion of an entire tract which is in the possession of the real owner cannot receive compensation for improvements made while holding such "scrambling" possession. Coonradt v. Myers, (Kan.) 2 Pac. Rep. 858. Nor can a mere trespasser, however long continued his possession may be, recover the value of improvements. Stille v. Schull, (La.) 6 South. Rep. 634. Nor can the grantee in a conditional conveyance who himself violates the condition upon which his estate depends. Walker v. Walker, (N. H.) 5 Atl. Rep. 460. A defendant claiming under certificates of sale issued at tax-judgment sales is not a holder under color of title, within the *Minnesota* statute allowing compensation to "a defendant holding under color of title adversely to the claim of plaintiff in good faith," McLellan v. Omodt, 33 N. W. Rep. 326; for such certificates of sale confer no title or color of title until the expiration of the period allowed for their redemption. Under the *Iowa* statute allowing compensation to an occupant, who, under color of title, and in good faith, makes improvements, an occupant whose only title is derived from adverse possession is not entitled to compensation for improvements made before such adverse possession ripened into color of title. Snell v. Mechan, 45 N. W. Rep. 398. A purchaser who, with knowledge of a prior incumbrance, puts improvements on the land, cannot, when ejected by the prior incumbrancer, receive compensation for their value under the *Vermont* statute allowing it in case defendant has purchased "supposing the title to be good in fee." Jones v. Stone Cutter Co., 20 Fed. Rep. 477. But improvements made by a defendant holding under a quitclaim deed fall within the *Connecticut* statute allowing the value of permanent improvements to a defendant who made them "in good faith, believing that he had an absolute title to the land in question," Griswold v. Bragg, 6 Fed. Rep. 342; and a verbal notice of an adverse claim, which was considered dubious by both plaintiff and defendant, will not deprive defendant of his right to the value of improvements made after the receipt of such notice, Griswold v. Bragg, supra.

CHARACTER OF TITLE. In *Michigan*, it has been decided that the statute allowing compensation for permanent improvements only applies to those cases in which plaintiff establishes his title to the fee, and that if a recovery is had by the life-tenant compensation cannot be allowed. Burkle v. Judge, 4 N. W. Rep. 192. The grantee in fee of a life-tenant cannot have compensation for improvements made during the life-time of the life-tenant, for such improvements inure to the benefit of the remainder-men. Curtis v. Fowler, (Mich.) 33 N. W. Rep. 804; Barrett v. Stradl, (Wis.) 41 N. W. Rep. 439; Bryan v. Uland, (Ind.) 1 N. E. Rep. 52; Van Bibber v. Williamson, 37 Fed. Rep. 756; but for improvements made after the death of the life-tenant the defendant is entitled to compensation, Barrett v. Stradl, supra.

CHARACTER OF IMPROVEMENTS. A sidewalk constructed by the occupant in compliance with a city ordinance is a permanent improvement, for which he is entitled to

compensation. Hentig v. Redden, (Kan.) 16 Pac. Rep. 820. The fact that the improvement is not beneficial to plaintiff because it is of a character for which he has no use does not affect defendant's right to recover compensation for it if it is found to enhance the value of the land. A railway company must allow compensation for a store erected on its right of way by defendant acting in good faith under the supposition that the land was his. Railway Co. v. McCaskill, (N. C.) 4 S. E. Rep. 468. An oil-well is a permanent improvement, the value of which must be allowed. Appeal of Phillips, (Pa.) 18 Atl. Rep. 998. So is a mine. Kille v. Ege, 82 Pa. St. 102, 84 Pa. St. 333. In *Pennsylvania*, there is no statute giving compensation for improvements, but the courts there have adopted the equitable doctrine allowing permanent improvements to be set off against the mesne profits.

VALUE OF IMPROVEMENTS. In Van Bibber v. Williamson, 37 Fed. Rep. 756, JACKSON, J., laid down the rule that the measure of compensation is the value of the improvements to the property at the time of the institution of the suit, irrespective of their original cost. The same rule is announced in McMurray v. Day, (Iowa,) 28 N. W. Rep. 476.