HENRY WEBSTER, PLAINTIFF IN ERROR, v. PETER COOPER.

A will, executed in 1777, which devised certain lands in Maine, to trustees and their heirs to the use of Richard (the son of the testator) for life, remainder, for his life in case of forfeiture, to the trustees to preserve contingent remainders; remainder to the sons of Richard, if any, as tenants in common in tail, with cross remainders; remainder to Richard's daughter Elizabeth, for life; remainder to trustees to preserve contingent remainders during her life; remainder to the sons of Elizabeth in tail, — did not vest the legal estate in fee simple in the trustees. The life estate of Richard, and the contingent remainders limited thereon, were legal estates.

No duties were imposed on the trustees which could prevent the legal estate in these lands from vesting in the cestuis que use; and although such duties might have been required of them relating to other lands in the devise, yet this circumstance would not control the construction of the devise as to these lands.

The devise to Elizabeth for life, remainder to her sons as tenants in common, share and share alike, and to the heirs of their bodies, did not give an estate tail to Elizabeth, under the rule in Shelly's case. But upon her death, her son (the party to the suit) took as a purchaser, an estate tail in one moiety of the land, as a tenant in common with his brother.

One of the conditions of the devise was, that this party, as soon as he should come into possession of the lands, should take the name of the testator. But as he had not yet come into possession, and it was a condition subsequent, of which only the person to whom the lands were devised over, could take advantage, a non-compliance with it was no defence, in an action brought to recover possession of the land.

The son, taking an estate tail, at the death of Elizabeth, in 1845, could maintain a writ of, entry, and until that time had no right of possession. Consequently, the adverse possession of the occupant only began then.

In 1848, the Legislature of Maine passed an act declaring that no real or mixed action should be commenced or maintained against any person in possession of lands, ..

where such person had been in actual possession for more than forty years, claiming to hold the same in his own right, and which possession should have been adverse, open, peaceable, notorious, and exclusive. This act was passed two years after the suit was commenced.

The effect of this act was to make the seisin of the occupant during the lifetime of Elizabeth, adverse against her son, when he had no right of possession.

This act, which thus purported to take away property from one man and vest it in another, was contrary to the constitution of the State of Maine, as expounded by the highest courts of law in that State. And as this court looks to the decisions of the courts of a State to explain its statutes, there is no reason why it should not also look to them to expound its constitution.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Maine.

The facts are set forth in the opinion of the court.

Upon the trial in the Circuit Court, the demandant's (Webster's) counsel, prayed the court to instruct the jury as follows:

1. That the act of the Legislature of Maine, of the year 1848, ch. 87, is not applicable to any case in which the title of the demandant had accrued before the passage of said act.

2. That said act is not applicable to the present action, the same having been commenced before the passage of said act.

3. That said act is void, because it is in violation of the constitution of the State of Maine, (Art. 1, § 21,) and because it is retrospective in its operation upon vested rights of the demandant.

4. That said act is void, because it is in violation of the Constitution of the United States, as being a law impairing the obligation of contracts.

5. That by the true and legal construction of the will of Florentius Vassall, said Elizabeth Vassall took only an estate for life in the demanded premises.

6. That by the true and legal construction of the will of Florentius Vassall, the demandant took a remainder in tail male, as tenant in common with said Henry Edward Fox, in the demanded premises expectant on the life estate of said Elizabeth Vassall.

7. That the demandant is not barred from recovering one undivided half of the demanded premises by the statutes of limitation of the States of Maine or Massachusetts, or any of them.

8. That if the demandant shows a right to recover one undivided half of the demanded premises, he may recover the same under the writ in this case, although he therein demands the whole of said demanded premises.

9. That it is not necessary, for the purpose of enabling the demandant to recover in this action, that he should have taken the name of Vassall.      F. DEXTER and E. H. DAVEIS,

*Counsel for Henry Webster.*

Webster v. Cooper.

But the honorable Judges, who presided at the said trial, declined to give to the jury any of the said instructions so prayed for by the demandant's counsel; but, on the contrary thereof, did instruct the jury, that by the true and lawful construction of the said will of Florentius Vassall, no legal estate in the demanded premises, or any part thereof, was ever vested in the demandant, but that, if the legal estate in the demanded premises was, and by force and effect of the said will, vested in any person or persons, it was thereby vested and continued to be in the trustees named in said will, viz., Lord Viscount Falmouth, Lord Viscount Barrington, and Charles Spooner, Esq., the survivors and survivor of them, and the heirs of such survivor; and that, therefore, the demandant could not maintain the present action to recover the same, and that it was, therefore, unnecessary to instruct the jury upon the other points mentioned in the demandant's prayer for instructions; whereas the said counsel for the demandant respectfully insist that the said Judges ought not so to have instructed the jury, but ought to have instructed them upon the matters and in the manner prayed for by the said counsel as aforesaid; and they did, therefore, except in law to the said instruction and said refusal of the said Judges; and, inasmuch as the several matters aforesaid do not appear by the record of said verdict, the said counsel have made and tendered to the said Judges this, their bill of exceptions, and pray that the same may be allowed.

All which being considered, and found conformable to the truth of the case, the presiding Judge has allowed this bill of exceptions, and hath thereto put his seal, this 28th day of April, in the year one thousand eight hundred and fifty-one.

[SEAL.]            LEVI WOODBURY,
                            *Ass. Jus. Sup. Court.*

The case was argued in this court by *Mr. Daveis*, with whom was *Mr. Dexter*, for the plaintiff in error, and by *Mr. Allen*, for the defendant in error.

The counsel for the plaintiff in error, made the following points:

1. A devise to A, and his heirs, to the use of, or in trust for B, vests the legal estate immediately in B. 2 Jarm. on Wills, 196, 198, 199; Hill on Trustees, Part 2, ch. 1, p. 229; 1 Greenl. Cruise, 346–7, note; Webster v. Gilman, 1 Story's R. 499, 515.

2. Where duties are imposed on the trustees which make it necessary that they should take the legal estate, the extent and duration of that estate are limited to exactly that quantity of interest which the purposes of the trust require. 2 Jarm. 213;

Hill on Trustees, Part 2, ch. 2; 1 Greenl. Cruise, 348, note; Doe v. Ironmonger, 3 East, 533; Robinson v. Grey, 9 East, 1; Curtis. v. Price, 12 Ves. 89; Doe v. Hicks, 7 T. R. 433; Doe v. Barthorp, 5 Taunt. 382, 385; Doe v. Simpson, 5 East, 163; 1 Hill. Real Prop. ch. 22, § 21, and §§ 27 to 31.

3. There are no duties imposed on the trustees by the will in this case, in relation to the demanded premises, nor is there any other expression of the intention of the testator to give them the legal estate.

4. The only duties imposed are, by the terms of the will, expressly confined to other lands, viz., to the Friendship and Greenwich plantations. And the purposes of those duties have been fully performed and discharged. Whether the trustees took a legal estate in those plantations at any time, may depend on the local law in Jamaica. Under our laws they would take but a chattel interest, as they were only to apply the rents and profits. Hill on Trustees, 240, 241, and cases cited to the second point.

5. The successive remainders limited to the use of the same trustees, to preserve contingent remainders in case of forfeiture, show that it was not the intention of the testator that the legal estate should vest in them originally. Curtis v. Price, 12 Ves. 100; Doe v. Hicks, 7 T. R. 433, 437; Fearne, Cont. Rem. 177, 178; Hill on Trustees, 240–1.

6. The act of Maine, 1848, ch. 87, is void as impairing the obligation of contracts. Fletcher v. Peck, 6 Cranch, 87, 137; 3. Story on Const. § 1385.

7. It is void, as it takes away vested rights. Wilkinson v. Leland, 2 Pet. S. C. R. 657, 658, Story, J.; Society, &c. v. Wheeler, 2 Gall. 105, 141; Ham v. McClaws, 1 Bay, 93; Bowman v. Middleton, 1 Bay, 252; Dash v. Van Kleek, 7 Johns. 502, Kent, Ch. J.; Call v. Hagger, 8 Mass. 423; 1 Kent, 455.

Taking away all remedy, is taking away the right. Bronson v. Kinzie, 1 How. 317, 318; Bruce v. Schuyler, 4 Gilman, R. 221, 277; Story on Const. § 1379; Sturges v. Crowninshield, 4 Wheat. 207; Gilmer v. Shooter, 2 Mod. R. 310.

8. It is void as against the constitution of Maine. Proprietors, &c. v. Laborce, 2 Greenl. 275, 294; Oriental Bank v. Freeze, 18 Me. R. 109, 112; Austin v. Stevens, 11 Shepley, 520; Constitution of Maine, Art. 1, §§ 1, 19, 21.

9. The will in this case gave a life estate only in the demanded premises to Elizabeth Vassall, with remainder to her sons as tenants in common. Willis v. Hiscox, 4 Myl. & Cr. 197; Right v. Creber, 5 Barn. & Cres. 860; Doe v. Laming, 2 Burrow, 1100; Backhouse v. Wells, 1 Eq. Abr. 184; White v. Collins, 1 Com. 289; Sisson v. Seabury, 1 Sumn. 235; Dingley v. Dingley, 5 Mass. 535; Webster v. Gilman, 1 Story, 499, 514; 2 Jarm. 235, 315; Fearne, Cont. Rem. 150.

10. "Sons" and "children" are words of purchase, and not of limitation. · 2 Jarm. 343, 344, 352 to 356; 1 Rolle's Abridg. 837, pl. 13.; Buffar *v.* Bradford, 2 Atk. 220; Lowe *v.* Davis, 2 Ld. Raym. 1561; Goodtitle *v.* Herring, 1 East, 264; Walker *v.* Snow, Palm. 359; Archer's case, 1 Coke, 66; Lisle *v.* Gray, 2 Lev. 223; Dingley *v.* Dingley, 5 Mass. R. 535; 1 Fearne, Cont. R. 150, 151, &c.; 2 Jarm. 301, 302, &c.; Doe *v.* Simpson, 5 Scott, 770; Doe *v.* Webber, 1 B. & Ald. 713; Sisson *v.* Seabury, 1 Sumn. 235.

The word "sons" has been held to control the words "heirs of the body," to make them words of purchase. Lowe *v.* Davies, 2 Ld. Raym. 1561; Lisle *v.* Gray, 2 Lev. 223; Goodtitle *v.* Herring, 1 East, 264; cited 2 Jarm. 301, 302; and also "issue male;" Mandeville *v.* Lackey, 3 Ridgw. P. C. 352.

The word "son" in the singular, can create an estate tail only when used as *nomen collectivum,* and where it is the manifest intention of the testator to give such an estate. Mellish *v.* Mellish, 2 B. & C. 520; cited 2 Jarm. 320.

11. The devise to the sons of Elizabeth Vassal as tenants in common, shows that it was not the testator's intention to give her an estate tail. These words control even the words "issue of the body," so that they take as purchasers. Doe *v.* Burnsall, 6 D. & E. 30; Burnsall *v.* Davy, 1 Bos. & P. 215; Doe *v.* Collins. 4 D. & E. 294.

12. The plaintiff's right of entry accrued at the death of Elizabeth, in 1845, and is not barred by adverse possession. Wells *v.* Prince, 9 Mass. 508; Wallingford *v.* Hearl, 15 Mass. 471; Angell on Lim. 42; 2 Sugd. Vend. 216, 323, 324.

13. The condition of taking the name of Vassal, is subsequent, and no one but the devisee over can take advantage of it. Gulliver *v.* Ashby, 4 Burrows, 1929; Taylor *v.* Mason, 9 Wheat 325, 349; Finlay *v.* King's Lessee, 3 Pet. 347, 374; 1 Jarm. 805.

14. The plaintiff can recover a moiety in this action. 6 Dane's Abr. 61; Dewey *v.* Brown, 2 Pick. 387; Somes *v.* Skinner, 3 Id. 52; Holyoke *v.* Haskins, 9 Id. 259; Rev. Stat. Maine, p. 610, §§ 12, 13.

*Mr. Allen,* for the defendant in error, made the following points:

1. That there is no error in the District Court in declining to give the instructions requested by said plaintiffs in error, as contained in the assignment of errors, from No. 1 to No. 9, both inclusive. Because, if there is no error in the tenth assignment, but the instruction therein given, was correct, plaintiff in error was not prejudiced by the withholding the instructions in the

preceding nine requests. Greenleaf v. Birth, 5 Pet. R. 132; Binney v. Chas. & Ohio Canal Co. 8 Pet. R. 214; U. S. Bank v. Planters Bank, Gill & Johns. R. 439; Watts & Serg. 391.

2. But if the instructions in first four assignments of errors had been material and injurious to plaintiff in error, they were correct and not erroneous; that the act of the Legislature of Maine of the year 1848, ch. 87, is valid and not liable to any legal objection, and is not in violation of the constitution of Maine, Art. 1, § 21, or of the Constitution of the United States. Phalen v. Virginia, 8 How. U. S. 168. " Such acts (Lim.) giving peace and quiet, may be said to effect or complete divesture or transfer of rights, yet as reasons have led to their validity, cannot be questioned." Id. S. P. 585, Mills v. St. Clair County. " Such laws do not impair the obligation of contracts within the sense of the Const. U. S." Townsend v. Jemison, 9 How. U. S. 407, 419, 420; and cases cited 10 How. U. S. 395, 401, 402, Bal. & Susquehannah R. R. v. Nesbit.

" No real or mixed action for the recovery of any lands in this State, shall be commenced or maintained against any person in possession of such lands, where such person or those under whom he claims, have been in actual possession for more than forty years, and claiming to hold the same in his, her, or their own right, and which possession shall have been adverse, open, peaceable, notorious, and exclusive. To take effect in one day after approval." Act of Maine, Aug. 11, 1848.

3. The said act may apply to actions then pending. Thayer v. Seavey, 11 Maine Rep. 284; Bacon v. Callender, 6 Mass. Rep. 309; 2 Gall. Rep. 315, 319. Stat. Lim. Rhode Island, no objection that it went into immediate operation. Story, J.

4. There was no error in the Circuit Court in refusing to give the instructions in the 5th and 6th assignment. They were properly declined; and cannot be assigned for error if the instruction in the 10th assignment was properly given.

5. There is no error in withholding the instructions requested in the 7th and 8th assignment. They were rightly withheld; and plaintiff was not injured thereby. The same may be said of the 9th instruction, contained in 9th assignment of errors.

6. No error in the Circuit Court in giving the instruction in the 10th assignment of errors.

1st. The fee-simple and whole legal estate in the premises was by the will of F. Vassal devised to Lord Falmouth and others and their heirs, as trustees; this action cannot be maintained, not being in their names or that of their heirs. Sanders, Uses & Trusts, 190–1, 197, 202, 3–4. 2 Jar. on Wills, 198–9, 202; Leicester v. Biggs, 2 Taunt. Rep. 109; Biscoe v. Perkins, 1 Ves. & Bea. 485; White v. Parker, 1 Scott, 542; Harton v.

Harton, 7 D. & E. 652; Gregory *v*. Henderson, 4 Taunt. 772; Cursham *v*. Newland, 2 Moo. & Scott, 113; Tompkins *v*. Willon, 2 Barn. & Ald. 84; Brewster *v*. Striker, 2 Comstock's Rep. 19, and note, 581–2.

2d. The purposes for which the legal estate was originally devised to the trustees, still continue to exist, viz., to preserve the remainders; viz., to " same trustees" for George Barrington in tail and his issue male and his issue female. In same manner to Richard Barrington and issue — same manner to William Barrington and issue; then to testator's granddaughter, Louisa Barrington and her fourth son and daughters, then to Rose Hening May and her issue; the words " same trustees" prior to each devise in remainder. On failure of all these to the use of the ministers and wardens of Westmoreland. 2 Jar. on Wills, 200, 202, 203–228. It was the intention of the testator that the legal estate should remain in the trustees until all the remainders should be executed. It is so expressed in the will.

3d. It is agreed that the persons named in said will, or devises in remainder, after the failure of issue of Elizabeth Vassal, or their lineal descendants, are now living.

4th. Trustees must hold the legal estate, as long as any of the remainders are outstanding; repetition of devise to same trustees to preserve six now unexecuted remainders, Jar. 222.

5th. Necessary that the trustees should hold the legal estate for other purposes, viz., out of the rents and profits &c., they were to purchase negroes, cattle and stock, and other utensils.

They were to appoint agents, attorneys, and managers. 2 Barn. & Ald. 84; Id. 554; 2 Jar. 223–5; 6 Barn. & Cress. 420; Morton *v*. Barrett, 22 Maine Rep. 257. Testator recommends that trustees should appoint his son Richard manager, at their discretion. They are to approve marriage jointures — assumes that money will pass through their hands — they may deduct and retain; discretion as to time of paying £10,000 — gives L. Falmouth 100 guineas for a ring; the other £50 cash for same purpose. Record, 29.

6th. The imbecility of testator's son Richard and the infancy of his granddaughter Elizabeth is a sufficient reason why he should devise the legal estate to trustees; still less, could he anticipate, with any certainty, the existence of unborn sons of his granddaughter. All the estates were over 3000 miles distant. Not named in the will in what State in New England his lands were situate. Trustees most competent to look them up. The *cestui que trusts* most incompetent.

7th. Another object of testator in giving the legal estate to trustees, would be to prevent *cestui que trusts* from docking the entailment and defeating subsequent remainders by common

recovery, without the legal estate, they could make no legal tenant to the precipe.

8th. It is competent for defendant to urge and maintain this objection. And to show the legal title in others, and thereby disprove plaintiff's seisin. Cutler *v.* Lincoln, 3 Cush. Rep. 128.

Tenant may give in evidence, title of a third person, without claiming under said third person for the purpose of disproving plaintiff's seisin in a writ of entry. Jack. on Real Actions, 157; Stearns on Real Actions, 365, 380–9; Hall *v.* Stevens, 9 Met. Rep. 418.

9th. In this case, defendant has no need of invoking that principle; for plaintiff himself introduces the will, by which it is seen that the legal title is in other persons than the plaintiff.

10th. The acquiescence of Lady Holland, the mother of plaintiff, in the open, exclusive, and adverse possession of defendant, and those under whom he claims from the time of her divorce from her first husband, till her decease, (a period of about fifty years) tends to prove that neither she nor her second husband ever claimed the legal estate to be in her.

No error in four first assignments. See brief, 2d point.

1. If the court should decide that there is error in the tenth assignment, and that the legal estate is not in the trustees, it is then contended that there is no error in withholding the instructions from the 5th and 9th requests; for if the legal estate was in the *cestui que trusts*, Elizabeth, mother of plaintiff, took an estate tail, and not for life only, and she is barred by the Statute of Limitations of Massachusetts and Maine, and so is the plaintiff. Shelly's case, 1 Coke, R. 93; 2 Jar. 241 to 249; Doug. 321, 324; Soule *v.* Soule, 5 Mass. R. 61; 19 Ves. 175; Malcom *v.* Malcom, 3 Cush. 472.

2. Plaintiff takes, by limitation under the will, an estate tail. Co. R. lib. 6, fol. 17, Wyld's case; Robinson *v.* Robinson, 1 Burr. R. 38; 2 Jar. 271, 272, 287; Chandler *v.* Smith, 7 D. & E. 532; Pearson *v.* Vickers, 5 East, R. 548; Jesson *v.* Wright, 2 Bligh, R. 258; Coulson *v.* Coulson, 2 Strange, R. 1125; Brook *v.* Astley, 3 Burr. R. 1570; 4 Barn. & Cress. 610; 1 Barn. & Ald. R. 944; Parkman *v.* Bowdoin, 1 Sumn. R. 359; Fearne on Remain. 118, 124; 4 Kent's Com. 214 to 232.

3. Sons, at time of will unborn, words of limitation. Wharton *v.* Graham, 2 W. Black. R. 1083; 1 Vent. 231, cited by Hale, C. J., in King *v.* Snelling; Byfield's case, 1 East, R. 229; Doe dem Cook *v.* Cooper, 2 Barn. & Cress. 524; 2 Barn. & Adol. R. 87; 4 Id. 43; 5 Id. 421; 2 Jar. 394 to 470; 4 Barn. & Cress. 610; 1 Moore, 682, pl. 939; Sondy's case, 9 Co. R. 127; Inman *v.* Barnes, 2 Gall. 315; 15 Ves. R. 546.

Rule in Shelly's case in force in Massachusetts till March 8th,

1792, 14 years after probate of this will. Davis v. Hayden, 9 Mass. 514; 4 Pick. 206; 15 Pick. 104; 7 Met. R. 172; Id. 425; Jones v. Morgan, 1 Brown, C. C. 206, Lord Thurlow. Plaintiff sues as tenant in tail. Shoemaker v. Sheely, 2 Den. 485.

Mr. Justice CURTIS delivered the opinion of the court.

Henry Webster, an alien, and subject of Great Britain, brought his writ of entry in the Circuit Court of the United States for the District of Maine, to recover possession of a parcel of land described in the count. He claims title under a will of Florentius Vassall. At the trial, the parties agreed on the following facts :

"It is agreed, by the parties, that the following statement of facts is true, namely, that the demanded premises belonged to the proprietors of the Kennebec Purchase, and were by them duly granted and assigned to Florentius Vassall, one of the proprietors in fee, in the year 1756, being included in the grant recorded in the records of the proprietary.

"That Florentius Vassall made his will September 20th, 1777, and died at London, 1778, seised of the lands in question, they then being unoccupied wild lands. The will was afterwards duly proved in the Prerogative Court of Canterbury, September 14, 1778, a copy of which will, with its exemplifications, has been duly filed and recorded in the Probate Office for the county of Kennebec; which will was offered in evidence, as copied, and makes a part of this case. (C.)

"Richard Vassall, named in the will, died about 1795, leaving only one child, Elizabeth Vassall, who married Sir Godfrey Webster, deceased, about the first day of January, 1793, by whom she had issue, two sons, namely, Sir Godfrey Vassall Webster, who died in the lifetime of said Elizabeth, without issue, and Henry Webster, the demandant. Said Elizabeth, afterwards, namely, in January, 1796, was legally divorced from her husband, the said Sir Godfrey Webster, and on the first day of July, 1797, she was legally joined in marriage with Richard Henry Fox, afterwards Lord Holland, by whom she had issue, one son, Henry Edward Fox, who is now living. All charges upon the land devised have been satisfied, and they are not now subject to any life estate, estate for years, or outstanding terms, under the will. Said Lord Holland died on the ——— 1841 ; said Lady Holland died in the fall of the year 1845. The persons named in said will as devisees in remainder, after the failure of the issue of said Elizabeth, or their lineal descendants, are now living in England, as is the said Henry Edward Fox, son of said Elizabeth. That said Florentius Vassall, was, at the time of said grant, a resident in Boston, State of Massachu-

setts; that he, on or before the year 1775, left his said residence, went to England, and never returned; and that neither he, nor any of the devisees named in said will, have ever resided within the limits of the United States since that time. The premises demanded, being the matter in dispute, are of greater value than two thousand dollars.

"The tenant, and those from whom he legally derives title to said demanded premises, have been in the quiet, undisturbed, open, notorious, and exclusive possession and occupation of said premises for and during the term of fifty years next preceding the commencement of this action, he and they claiming to hold the same adversely to any claim of said demandant, or any other person, as his and their own property in fee-simple."

These facts, together with the will of Florentius Vassall, made the case. By this will the testator devised three plantations in Jamaica, and all his lands in New England, (which included the demanded premises,) to Lord Falmouth, Lord Barrington, and Mr. Charles Spooner, and their heirs, to the uses, upon the trusts, and for the intents and purposes, and with and subject to the powers and provisos therein expressed. The will then proceeds to declare, in respect to all the lands in New England, as follows: To the use of my son, Richard Vassall, for and during his life, and from and after the determination of that estate by forfeiture, or otherwise, during his life, to the use of the three trustees during the life of Richard Vassall, in trust to preserve the contingent uses and estates thereinafter mentioned, and for that purpose to make entries and bring actions as occasion shall require, but nevertheless to permit Richard Vassall to take the rents of the premises to his own use during his life. The testator then declares the remainder, after the death of Richard, to be to the use of the son and sons of Richard, to be equally divided between them, share and share alike, as tenants in common, and not as joint tenants, and to the several and respective heirs male of the bodies of such sons, with cross remainders among them; and in default of such issue male of Richard, subject to a term of years, which it is agreed is not outstanding, to the use of Elizabeth Vassall, the daughter of Richard, for her life, with remainder as before stated to the trustees for the life of Elizabeth to preserve contingent remainders, in case of forfeiture of her life estate; and then follows the provision under which the demandant claims title, which is therefore given in the words of the will. "And from and immediately after the decease of the said Elizabeth Vassall, to the one or all and every the son and sons of the said Elizabeth Vassall, to be begotten to be divided between or amongst such sons, if more than one, share and share alike, and they to take

42 *

as tenants in common, and not as joint tenants, and the severa and respective heirs male of the body and bodies of all anc every such son and sons issuing." Then follow remainders to the other daughters of Richard, as tenants in common in tail general, with cross remainders; remainder to the daughters of Elizabeth Vassall, as tenants in common in tail general, with cross remainders, — with successive remainders to George and Richard, and William Barrington, testator's grandsons, for life; remainder to their sons, as tenants in common in tail male; remainder to testator's granddaughter, Louisa Barrington, for life, and her sons in common in tail male; remainder to her daughters, as tenants in common in tail general; remainder to testator's daughter, Elizabeth Barrington, for life; remainder to her other sons "in tail male successively;" remainder to her future daughters, as tenants in common in tail; remainder to testator's nephew May, for life; remainder to his sons in common in tail male; remainder to his daughters in common in tail; remainder to the minister and wardens of Westmoreland, &c.

These are the most material provisions of the will of these lands, and are sufficient to show its general structure, in reference to the questions which have been made concerning its legal effect.

The first of these question is, whether, by force of the will, the demandant took any, and if any, what legal estate in these lands on the decease of his mother, Elizabeth Vassall.

It is insisted, by the tenant's counsel, that the trustees took the legal estate in fee simple, and that the estates limited to Richard Vassall for life, and to the others, by way of remainder, were only equitable estates, and consequently the demandant cannot maintain this action.

But whether we look to the evident intent of the testator, or to the settled technical meaning of the language he has employed, we think it clearly appears that the life estate of Richard Vassall and the contingent remainders limited thereon were legal estates, and that the trustees did not hold the fee-simple under this will. The instrument was drawn in England, evidently by a skilful draughtsman, and is in strict conformity with well-known precedents. It employs technical language with accuracy, and all the various provisions of the will, though numerous and complicated, compared with the usually simple testamentary dispositions of property in this country, are capable of being clearly understood and fully executed. The substance of the devises of these lands, may be stated to be: to the trustees and their heirs to the use of Richard for life, remainder, for his life in case of forfeiture, to the trustees to preserve contingent remainders; remainder to the sons of Richard, if any, as tenants in common

in tail, with cross remainders; remainder to Richard's daughter Elizabeth for life; remainder to trustees to preserve contingent remainders during her life; remainder to the sons of Elizabeth in tail, the demandant being the elder of her two sons.

A devise to the trustees and their heirs to the uses mentioned, carries the legal estate to the *cestuis que use*, unless the will has imposed on the trustees some duty, the performance of which requires the legal estate to be vested in them. And in that case they would take an estate exactly commensurate with the exigencies of their trust. Morrant *v.* Gough, 7 B. & C. 206; Kenrick *v.* Lord Beauclerck, 3 B. & P. 178; 10 Bythewood on Con. 214; Jarm. on Wills, 198–9; Nielson *v.* Lagow, 12 How. 110, 111; 1 Greenl. Cruise, 346–7, note.

The testator has not imposed on the trustees any duties, connected with these lands, which in any way interfere with the existence of legal estates in the different beneficiaries named in the will. On the contrary, the sole duties to be performed by them, in reference to these lands, are to take the life estates, in case of forfeiture, and hold them, so that the future remaindermen may not be deprived of the legal estates limited to them by way of contingent remainders, which require the preservation of the particular estates to support them.

Whether the trustees took and held any legal estate in either of the plantations in Jamaica, it is not necessary to determine. It was argued that they did, because they have some duties to perform concerning two of them, and that the testator employs the same language in devising these two plantations to the trustees, as he does in devising the lands in New England. But it by no means follows that the same words devising to trustees two parcels of land, must necessarily vest the legal estates in both parcels in the trustees, because they take a legal estate in one of those parcels. They may take a legal estate in one, because subsequent parts of the will require them to do acts in reference to it, which can be done only by the holder of the legal estate, and then the law assigns to them such an estate as the due execution of their trust demands; while at the same time, by force of the statute of uses, or of wills, the other land, as to which no duties are required of the trustees, goes to the *cestuis que use.*

So far as this will operates on the lands in New England, there is nothing to prevent the usual and settled operation of a devise to uses, which is, to vest the legal estate in the *cestuis que use*; and it is placed beyond all doubt that it was not intended the trustees should hold the fee, because there are express limitations of life estates to them to preserve contingent remainders, which would be wholly inoperative if they took the

fee, and is sufficient of itself to control any doubtful intent, according to Doe *v.* Hicks, 7 T. R. 433; Curtis *v.* Price, 12 Ves. 100.

Our conclusion is that the legal estates in the New England lands, were to go to the beneficiaries named in the will.

It is further urged by the tenant's counsel, that the legal effect of the devise to Elizabeth Vassall for life, remainder to her sons, as tenants in common, share and share alike, and to the heirs, of their bodies, gave an estate tail to Elizabeth Vassall, under the rule in Shelly's case, which was in force in Massachusetts, within whose limits these lands lay at the time this will took effect. There is no doubt this rule made part of the law of Massachusetts until the 8th of March, 1792, when it was abolished by statute, so far as it respects wills. Bowers *v.* Porter, 4 Pick. 198; Steel *v.* Cook, 1 Met. 282. But in our opinion, the rule in Shelly's case is not applicable to this devise. That rule is, that when the ancestor, by any gift or conveyance, takes an estate of freehold, and in the same gift or conveyance an estate is limited, either immediately or mediately, to his heirs in fee or in tail, that the words heirs, &c., are words of limitation, and not of purchase.

Here the life estate is limited to Elizabeth Vassall, and the remainder to her sons as tenants in common, share and share alike, and the heirs of their bodies. The fee tail is not limited to the heirs in tail of the first taker. The heir in tail was this demandant; and the remainder is not limited to him, but to him and his brother, as tenants in common. It is not a question, therefore, whether the same persons shall take by descent or purchase, which alone is the matter determined by the rule in Shelly's case; for the two sons could not take an estate tail from their mother as tenants in common. They must take as purchasers, or not take at all; and there is no rule of law which forbids such a devise, nor can the rule in Shelly's case be applied to it. On the contrary, it is well settled that a limitation by way of remainder to the sons of the first taker, as tenants in common, manifests the intent of the testator that the ancestor should not take an estate in fee or in tail, and that the sons may and do take as purchasers. Doe *v.* Burnsall, 6 T. R. 30; Burnsall *v.* Davy, 1 B. & P. 215; Gilman *v.* Elvy, 4 East, 313, Doe *v.* Collins, 4 T. R. 294; 4 Greenl. Cruise, 389.

Our opinion is, that upon the decease of his mother, this demandant took, as a purchaser, an estate tail in one moiety of these lands, as a tenant in common with his brother.

It was objected that the devise to him was upon the condition that as soon as he should come into the actual possession of the lands devised, he should take and use the surname of Vas-

sall; but it is enough to say that he does not appear to have yet come into such actual possession, and that if this condition subsequent were broken, only the person to whom the lands are devised over can by an entra take advantage of it. Taylor v. Mason, 9 Wheat. 325; Finley v. King, 3 Pet. 347.

Under the Revised Statutes of Maine, c. 145, § 13, the demandant may recover according to his title, provided he has a right of entry; and this raises the only remaining question, whether he has such a right, or whether it is barred by an act of the Legislature of Maine, passed on the eleventh day of August, 1848, which is as follows:

An act, in addition to the one hundred and forty-seventh chapter of the Revised Statutes.

Sec. 1. No real or mixed action for the recovery of any lands in this State shall be commenced or maintained against any person in possession of such lands, where such person, or those under whom he claims, have been in actual possession for more than forty years, and claiming to hold the same in his or their own right, and which possession shall have been adverse, open, peaceable, notorious, and exclusive.

Sec. 2. This act shall take effect at the end of one day, from and after its approval by the governor.

This action was commenced on the fourteenth of April, 1846, and, consequently, had been pending upwards of two years, when the above act was passed. The inquiry is, what is its effect upon this action, and the title of the demandant? That it was intended to be retrospective, and to bar a recovery in actions then pending, upon proof of such seisin by the tenant as the act describes, is plainly indicated. Under the constitution of the State of Maine, can it so operate? To determine this question, it is necessary to take into view the legal rights of the demandant and tenant, when this act was passed, and the change in those rights attempted by the act.

The demandant, on the decease of his mother, in 1845, became constructively seised of an estate tail, and had a right of entry into these lands. The actual seisin of the tenant and those under whom he claims, though adverse to all persons having estates in possession under the will of Florentius Vassall, for a period of time sufficient to bar their right of entry, did not become adverse as against the demandant, until he acquired an estate in possession, by the decease of his mother; and, consequently, when he brought this action, he was lawfully entitled to one moiety of the land, as tenant in tail, having an estate of inheritance which he could convey by deed, and upon which, being disseised, he could maintain a writ of entry. In other words,

the land was his property, and, as such, he had a right to recover and hold it. Rev. Stat. c. 147, § 3.

The effect of the act is, to make the seisin of the tenant, and of those under whom he claims, adverse as against the demandant, during the time he had no right of possession, and thus to deprive him of his right of entry, and destroy his estate in the land. The actual operation of this law upon the demandant's title, would have been expressed in words, if it had been said in the statute that, whereas, up to that time an actual wrongful seisin had been by law adverse only against those having estates in possession, and so, those coming in by way of remainder, were well entitled to the land, however long that actual wrongful seisin might have been continued; yet, thereafter, those who have come in by way of remainder, shall not be deemed entitled to the land, because such actual seisin shall be taken to be adverse as against them, and they shall not be allowed to maintain an action for the recovery of the land to which they had lawful title when the action was brought. It is only by giving this construction to the law, that it can be made to operate at all, on the demandant's title. It requires a possession for forty years, "adverse, open, peaceable, notorious, and exclusive." Adverse to whom? Exclusive of whom? If adverse to, and exclusive of, the demandant, who came into the title by way of remainder, less than three years before the act was passed, then, according to the law of the State existing down to the passage of the act, no actual wrongful seisin could be adverse to him until he had an estate in the land entitling him to its possession. But we cannot suppose this law meant to enact merely, that forty years' exclusive and actual seisin should bar an action by one having title to the possession during the whole of that period, because, by the Revised Statutes, (c. 147, § 1,) twenty years was sufficient; and, therefore, we are forced to conclude, that the intention of the legislature was, to make an actual seisin, for forty years, sufficient to destroy a title which had become vested, by way of remainder, before the act was passed, and which was a valid title by the then existing law.

Under the constitution of the State of Maine, as expounded by the highest court of that State, is it in the power of the legislature to pass a retrospective law, thus operating to destroy an estate in lands?

We think this case not distinguishable from the case of the Proprietors of the Kennebec Purchase, v. Laboree et al. 2 Greenl. Rep. 275. That was a writ of entry to recover a tract of land. The principal question was, whether an act of the legislature concerning disseisin, was valid in its retrospective operation. Prior to the passage of this act an entry under a

deed, duly registered, which described a tract of land by metes and bounds, and actual possession of a part of that tract, operated, by the law of Maine, as a disseisin of the true owner of the whole tract described in the deed. But an entry, without such a deed, gave seisin, as against the owner, only of so much of the land as was actually occupied; and this occupation was required to be equivalent to what is figuratively described in the common law as *pedis possessio;* that is, open, notorious, and exclusive, such as at once to give notice to all, of the nature and extent of the possession and claim, and show the exercise of the exclusive dominion over the land, and the appropriation of it to the use and benefit of the possessor. This being the state of the law when the action was brought, a law was passed, one section of which was in these words:

"Be it further enacted; that, in any writ or action which has been, or may hereafter be brought, for the recovery of any lands, &c., it shall not be necessary for limiting the demandant and barring his right of recovery, that the premises defended shall have been surrounded by fences, or rendered inaccessible by other obstructions; but it shall be sufficient if the possession, occupancy, and improvement thereof, by the defendant, or those under whom he claims, shall have been open, notorious, and exclusive, comporting with the ordinary managements of similar estates in the possession and occupancy of those who have title thereunto, or satisfactorily indicative of such exercise of ownership as is usual in the improvement of a farm by its owner; and no part of the premises demanded and defended shall be excluded from the operation of the aforesaid limitation, because, such part may be woodland or without cultivation."

The Supreme Court of Maine held, that so far as this act attempted to change the law of disseisin in respect to titles existing when it was passed, the act was inoperative and void, because in conflict with the constitution of that State. The opinion of the court, delivered by Mellen, Chief Justice, contains an elaborate and searching analysis of the subject, and it is evident, that learned court considered it with all the care demanded by a question of so much delicacy and importance, and brought to its adjudication sound principles of constitutional jurisprudence  The principles of this decision have been recognized in subsequent cases, (Oriental Bank *v.* Freeze, 18 Maine Rep. 109; Austin *v.* Stevens, 24 Maine Rep. 520; Preston *v.* Drew, 5 Law Reporter, 189,) and we are not aware that it has ever been questioned, or denied to be a just exposition of the constitutional law of that State. The result of the decision is, that the constitution of the State has secured to every citizen the right of "acquiring, possessing, and enjoying property;"

and that, by the true intent and meaning of this section, property cannot, by a mere act of the legislature, be taken from one man and vested in another directly; nor can it, by the retrospective operation of law, be indirectly transferred from one to another, or be subjected to the government of principles in a court of justice, which must necessarily produce that effect.

According to this decision, the act now in question is inoperative, as respects this action, and the demandant's title, on which it is founded. For, unless by a retrospective operation it subjects his title to the government of a new law of disseisin, which, in effect, transfers his property to the tenant, it can have no operation; and whether such an effect can be produced by an act of the Legislature of Maine, under the constitution of that State, was the precise question adjudicated by the Supreme Court in the case referred to, which adjudication we understand to contain an established principle in the fundamental law of that State.

The thirty-fourth section of the Judiciary Act, (1 Statute at Large, 92,) as well as the rule of general jurisprudence, as to the operation of the *lex loci* upon titles to land, requires us to determine this case according to the law of the State of Maine. In ascertaining what that law is, this court looks to the decisions of the highest court of that State; and where the question turns upon the construction to be given to the constitution of the State, and we find a construction made by the highest State Court very soon after the constitution was formed, acquiesced in by the people of the State for nearly thirty years, and repeatedly confirmed by subsequent judicial decisions of that court, we cannot hesitate to adopt it, and apply it to this case, to which, in our judgment, it is justly applicable. Such has been the uniform course of this court. McKeen *v.* Delancy's Lessee, 5 Cr. 22; Polk's Lessee *v.* Wendall, 9 Cr. 87; Gardner *v.* Collins, 2 Pet. 58; Shelly *v.* Guy, 11 Wheat. 351; Green *v.* Neal, 6 Pet. 291, are some of the cases in which this course has been followed, and its reasons explained. The question has usually been concerning the construction of a statute of a State. But we think there is no sound distinction between the construction of a law enacted by the legislature of a State, and the construction of the organic law, ordained by the people themselves. The exposition of both belongs to the judicial department of the government of the State, and its decision is final, and binding upon all other departments of that government, and upon the people themselves, until they see fit to change their constitution; and this court receives such a settled construction as part of the fundamental law of the State.

In conformity with these principles, we are constrained to.

hold the law now in question to be inoperative upon the demand-ant's title, and consequently, that he is not barred by it from maintaining this action.

The judgment of the Circuit Court must be reversed, and a *venire de novo* awarded.

## Order.

This cause came on to be heard on the transcript of the re-cord from the Circuit Court of the United States for the District of Maine, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Circuit Court in this cause, be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo*.