## ALBION LUMBER CO. v. DE NOBRA.

(Circuit Court of Appeals, Ninth Circuit. February 10, 1896.)

### No. 230.

1. NEGLIGENCE—PRESUMPTION—DERAILMENT OF TRAIN.

Though, ordinarily, in an action for damages arising from negligence, the negligence charged must be proved by the plaintiff, when the injury complained of arises from an accident which, in itself, is indicative of negligence, such as the derailment of a train of cars, the plaintiff is relieved from the burden of further proving the defendant's negligence, as the law presumes its existence. It is not, therefore, necessary for the plaintiff, in an action for damages caused by the derailment of a logging train, to prove that running such train at any given rate of speed was dangerous, in order to justify the submission to the jury of the question of defendant's negligence in running it at too high a speed.

2. SAME—CARRIER OF PASSENGERS—LIABILITY OF OTHER THAN COMMON CARRIER.

In an action against a logging company for personal injuries caused by the derailment of a train on its logging road, on which the plaintiff was riding, it appeared that the defendant's sole business was logging, and it had never authorized the use of its road for carrying passengers; but there was evidence that the defendant's general superintendent had instructed the plaintiff, who had come to the logging camp in search of work, to get on the train, and go for his blankets, so as to return and go to work, and also evidence that the trains were used, with the knowledge of defendant, for carrying people up and down the road. *Held,* that it was not error to refuse to direct a verdict for defendant.

In Error to the Circuit Court of the United States for the Northern District of California.

C. E. Wilson and Warren Olney, for plaintiff in error.
A. B. Hunt, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The plaintiff in error was the defendant in the court below in an action brought by Maria De Nobra, as administratrix, to recover damages for the death of Jose De Nobra, who was killed while being transported on the logging train of said defendant. It was alleged in the complaint that the defendant was engaged in operating a railroad, and carrying passengers and freight thereon; that it received De Nobra as a passenger on one of its trains; that the employés in charge of the train were careless and reckless and incompetent to manage the same, which fact was known to the defendant; and that, while being transported thereon, the train was carelessly and negligently run, and at a dangerous and reckless rate of speed, to wit, at more than 30 miles per hour, whereby the cars were thrown from the track, and De Nobra was killed. It was proven that the defendant operated its railroad as a logging road solely for the transportation of its own property; that one Hickey had general charge of the road and the logging camps, and had authority to employ men in the woods to work for the company; that the deceased and some others who were with him applied to him for employment on the day of the accident, and were engaged to work for the defendant. There was evidence to the effect that Hickey inquired if they had blankets, and on being informed that the deceased and another had blankets at the Big River Hotel, several miles distant, he told them to get on the cars, and go down and get their blankets, and come up the next day, and start in to work. Hickey testified, however, that he did not tell the men to get on the cars; that he had no authority to permit it; that it was not safe, for the reason that the logs were liable to roll off. The conductor of the train at the time of the accident was riding on top of the logs, and had seen the deceased on the top of the logs before the train started, and knew that he was there. He testified that he did not object to him riding or to any one riding on the train. The general manager of the defendant testified that there was no way of getting down the road except by riding on the train or walking; that those who rode on the train had to ride on the logging cars; that there was no other place for the brakeman and conductor or anybody else except to ride on the logging cars; that he knew of no instance where the company had objected to persons riding on the train if they wanted to do so. It was shown that the train was a long one, consisting of 13 cars loaded with logs, drawn by a single locomotive. There was testimony that the speed of the train at first was only about 8 or 10 miles an hour, for the first half mile, and that, upon coming to a steep down grade, the train increased its speed, and ran "like the wind," and, in the opinion of a witness, at the rate of 30 miles an hour, when a sudden jerk was felt, and the train went off the track. A witness testified that 30 or 40 miles an hour was a dangerous rate of speed for that road.

Upon the writ of error to this court, the principal assignment of **error** is that the court gave the following instruction:

"If you find from the evidence that the train was run at 30 miles an hour, and you also find it was gross carelessness to do so,—that is, to so run it,—you will find on this issue for the plaintiff. If you find it was not so run, but, on the contrary, it was run from 7 to 10 miles an hour, and that this was not gross negligence, you will find on that issue for the defendant. I have instanced these two rates of speed of 30 miles an hour, and from 7 to 10 miles an hour; but if the evidence satisfies you that the train was run at a different rate from either 30 miles an hour, or from 7 to 10 miles an hour, then you will have to address yourselves to the inquiry as to whether or not such rate was or was not gross negligence. If you find it was gross negligence, you will find for the plaintiff; and, if you find it was not, you will find for the defendant."

It is said that this is error, because there was no evidence whatever that running the train at a less rate of speed than 30 miles per hour was dangerous, and that, by the instruction, the court left the jury to determine whether or not any rate of speed between 10 miles an hour and 30 miles an hour was negligence. It is true that, ordinarily, in an action to recover damages for personal injuries, the elements of which the negligence consists must be proven by the plaintiff, and the burden of proof rests upon him. But, if it is shown that the injury complained of resulted from an accident which in itself is indicative of negligence, the plaintiff is relieved from the burden of further proving the negligence of the defendant, for the law presumes its existence. The derailment of a train has been held to be of itself sufficient to raise the presumption of negligence on the part of the railroad company. Seybolt v. Railroad Co., 95 N. Y. 562; The New World v. King, 16 How. 469; Railroad Co. v. Rainbolt, 99 Ind. 551; Cummings v. Furnace Co., 60 Wis. 603, 18 N. W. 742, and 20 N. W. 665; Dougherty v. Railroad Co., 81 Mo. 325. It was not necessary, therefore, that the plaintiff should have proven that running the train at any given rate of speed was dangerous, or negligent on the part of the defendant. Notwithstanding the fact that the deceased was on the defendant's train upon the defendant's invitation, and not as a passenger for hire, the defendant owed him proper and adequate care under the circumstances. The instruction required the jury to find the existence of gross negligence on the part of the defendant before the plaintiff could recover. In that respect it was perhaps more favorable to the defendant than the law justifies, but of that the defendant cannot complain. Railroad Co. v. Derby, 14 How. 486; The New World v. King, 16 How. 469; Railroad Co. v. Lockwood, 17 Wall. 357.

Said Mr. Justice Davis, in Railroad Co. v. Arms, 91 U. S. 494:

" 'Gross negligence' is a relative term. It is, doubtless, to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence'; but, after all, it only means the absence of the care that was requisite under the circumstances."

Error is assigned to the refusal of the court to instruct the jury to return a verdict for the defendant. It is contended that the defendant was entitled to such instruction under the proof which was submitted, and was not denied, to the effect that the defendant was not engaged in the business of carrying passengers upon

its road, and had never authorized its superintendent to permit the use of its road for that purpose, but that its sole business was that of logging. The bill of exceptions shows that Hickey, the superintendent, had the general charge and management of the defendant's woods, logging camps, and logging railroad. He had authority to, and did, employ the men who worked for the company in the redwoods. The superintendent, so clothed with such power by the defendant, and so in the control and management of its road, engaged the plaintiff's intestate to work in the logging camps. There is evidence that he instructed him to get upon the cars, and to go down the defendant's road, for the purpose of getting his blankets, and to return the next day. The defendant cannot be heard to say, in the absence of notice to the contrary, that its general superintendent had not the powers usually incident to his office. Such an officer, in the management of such property, controls the coming and going of the trains, the method of their operation, and ordinarily decides who shall or shall not ride upon them. There was evidence that the company had notice of the fact that its trains had been used in carrying people up and down its road. There is no evidence that it had taken any means to prohibit such use of its property. The deceased was in search of work, and for that purpose applied to the defendant's superintendent, and was by the defendant, through such superintendent, hired to work. He was, by the duly-authorized agent of the defendant, invited to get upon the train upon which he received his injury. The case is widely different in principle from the cases cited by the plaintiff in error, of which those most relied upon were Duff v. Railroad Co., 91 Pa. St. 458; Hoar v. Railroad Co., 70 Me. 65; and Morris v. Brown, 111 N. Y. 318, 18 N. E. 722. In Duff v. Railroad Co. the injured person had habitually ridden upon the train without paying fare, in violation of the company's regulations, but with the connivance of the conductor. The court said: "This is the case of a mere trespasser, and the company owed him no duty." In Hoar v. Railroad Co. it was held that, if the defendant company were not a common carrier, a section foreman with his hand car had no right to impose upon it the onerous responsibilities arising from that relation; that he had "no right to accept passengers for transportation, and bind the company for their safe carriage, and every man may safely be presumed to know thus much." In Morris v. Brown the defendants were contractors for the excavation of a tunnel. The plaintiff's intestate was a civil engineer, whose duty it was to inspect their work. In so doing, he entered the tunnel on dump cars, which were operated to remove débris, and were not intended to take persons into the tunnel, or fitted for that purpose. There was no obstruction in the way of the engineer's inspecting the work on foot. He had ridden on the dump cars with the permission of the brakeman, but not with the knowledge of the defendants, and there was no proof that the brakeman had authority to give such permission. Upon these facts, it was held that the defendants were not liable for an accident occurring through the brakeman's negligence.

It is further contended that the court should have instructed the jury to return a verdict for the defendant, on the ground that the negligence of the deceased was proven to have contributed to his injury. Such contributory negligence is said to consist in the fact that the plaintiff rode in a dangerous place upon the car. The evidence upon this point was conflicting. The conductor testified that the place where the deceased was riding was as safe as it would have been elsewhere, and it appeared that the conductor and brakeman both rode there. In view of such testimony, there can be no doubt that the question of the contributory negligence of the plaintiff's intestate was properly left to the jury.

The judgment is affirmed, with costs to the defendant in error.