INGRAM-DAY LUMBER COMPANY *v.* FRANK HARVEY.

[53 South. 347.]

1. NEGLIGENCE. *Logging railroad. Licensee. Assumed risk.*

A logging railroad used exclusively for hauling logs to a saw mill, not being a common carrier, owes no duty to a party not connected with the road, who rides upon one of its cars without invitation, except not to willfully injure him.

2. ASSUMED RISKS. *Same.*

Such a person taking passage on such a road is bound with a knowledge of the character of the road and assumes the risk.

APPEAL from the circuit court of Harrison county.
HON. W. H. HARDY, Judge.

Suit by Frank Harvey against the Ingram-Day Lumber Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Money & Graham,* for appellant.

The court below should have excluded the evidence and directed the jury to find for the appellant; and having failed in that, should have peremptorily instructed the jury to find for the appellant as requested in appellant's first instruction upon the whole evidence.

If this were a case where mere negligence was charged, the appellee could not recover because of his contributory negligence in taking his seat and riding on the tank or tender which was being pushed by the engine, and where he remained with his back in the direction the train was going. If appellee had ridden either in the engine cab or on the log cars he would not have been injured, as no one riding in either of these places was hurt, hence he cannot recover. *Illinois, etc. R. R. Co.* v.

*Brown,* 77 Miss. 338; *Martin* v. *Kansas, etc. R. R. Co.,* 77 Miss. 720; *Railroad Co.* v. *Jones,* 95 U. S. 439.

The appellant was not a common carrier. No fare was demanded of appellee, nor was any paid. The declaration is drawn on the theory that as he was riding on appellant's train for his own pleasure, and on no matters concerning appellant. The evidence showing the custom of appellant's servants to permit others to ride free of charge, discloses that appellee was a mere licensee, and it was upon that theory alone that the case was tried and submitted to a jury.

There can be no recovery upon the second count of the declaration alleging willful, wanton and reckless negligence in regard to the repair and condition of the road bed and track, alleged therein as the proximate cause of the injuries, or that the running of the train over it with the engine and tender reversed. When appellant got on the train the track was in the same condition and the engine and tender and cars were in the same position as they were at the time of the injury; and while the evidence shows clearly that it was no more dangerous to run the engine and tender reversed than forward, so far as jumping the track is concerned, yet even if it were, Harvey accepted the whole situation when he accepted the license, and thereby took upon himself all risk of danger incident to the running of the train. Appellant certainly was under no duty to appellee to keep its track in good repair; nor was appellant bound to run its train in any particular manner. No omission or affirmative act intervened between the time appellant boarded the train and the time of the accident to change the situation in this respect. *Illinois, etc. R. R. Co.* v. *Arnola,* 78 Miss. 787; *Woolwine v. Railroad Co.,* 32 Am. St. Rep. 859; *McCauley* v. *Tennessee, etc. R. R. Co.* (Ala.), 9 South. 612; *Railway Co.* v. *Sawyer,* 46 South. 68; *Railway Co.* v. *Rayley,* 157 Fed. (C. C. App.) 532.

Nor can any judgment in this case be sustained based upon the count of the declaration alleging willful, wanton, reckless and gross negligence of appellant's engineer, Anderson, in operation of the train. The only duty appellant owed appellee in this regard was to exercise ordinary care, such as ordinarily is exercised under such circumstances, or in other words, to do no affirmative act of negligence that would amount to an intentional disregard for life or safety. Did appellant use reasonable care in the running of the train? There is no claim that appellant failed to perform its duty except as to the rate of speed of its train at the time of the injury, considering the alleged bad condition of the track, and this must be clearly shown by a preponderance of the evidence in the case.

A grossly negligent operation of the train under the circumstances was necessary to be established by appellee in order to entitle it to recovery, and the only negligent operation complained of was the excessive speed. We submit that this contention is not sustained by any evidence; the record utterly fails to show that the particular rate of speed at which the train was run at the time of the accident was the proximate cause of the injury to Harvey. It was necessary to show this by a preponderance of evidence and circumstances. The legal relation of cause and effect was not established between this particular alleged negligence and the injury suffered. It is not sufficient to merely show negligence, even where shown, and a possibility that injury resulted therefrom was caused thereby; there must be shown a connection between the two. *Illinois, etc. R. R. Co.* v. *Cathy,* 70 Miss. 332, 12 South. 253; *Winkle* v. *Peck,* 112 S. W. Rep. 1026; *O'Donnel* v. *American Mfg. Co.* (La.), 36 South. 661; *Keenah* v. *McAdams,* 113 N. Y. Sup.; *Whitehouse* v. *Bryant Lumber Co.,* 97 Pac. 751; *Western, etc. R. R. Co.* v. *Essinger,* 22 S. E. 580; *Southern R. R. Co.* v. *Guyton,* 25 South. 34; *Williams* v. *Railway Co.,* 48 South. 209.

*J. H. Mize* and *Jeff. D. McLendon,* for appellee.

It is important to note the exact status of appellee when he was on the train. He was not a passenger; he was not an employe; and he was not a trespasser. He was a licensee under the most favorable conditions; in fact, he was a licensee by invitation. Here, we have the appellant, a logging railroad and saw mill company, which in order to run its saw mill business has to employ a large number of employes, and, by its general custom, has transported their employees to and from their work; and has in fact been in the habit of transporting everybody who had occasion to go out to the end of the line; and, when appellee boarded the train in search of work from appellant, he immediately became a licensee. Certainly appellant owed appellee the duty of protection against gross carelessness and willful recklessness. This question was properly submitted to the jury over no objection by appellant.

Was the proof sufficient to warrant the jury in finding the appellant guilty of gross negligence amounting to recklessness, willfulness or wantonness? We contend that it was. There is no question that appellee was invited to ride upon the train. Anderson, the engineer, testified that he told appellee that he would see the superintendent Barrett, and speak to him about Harvey's getting a job with appellant; and that Anderson did speak to Barrett, who said that there was no employment for appellee. Appellee testified that Barrett told him that he would do everything possible to secure appellee employment.

All of the witnesses for appellee testified that the track was in very bad condition; that it was from four to six inches lower than it ought to be, and swinging three or four inches. One of the foremen of the appellant company, who had charge of the tracks at this particular point, testified that it was his duty to keep it in

repair, and that the track at such place was about six inches lower than it should have been.

Practically all of appellant's witnesses testified that the track had been washed out, but had been filled up and put in a reasonably safe condition; and that the train was running from twelve to fifteen miles per hour. The evidence further shows that, notwithstanding the fact that the appellant company knew of the defective condition of the track prior to the wreck, yet it continued to run trains over it according to its regular custom or schedule. Anderson, the engineer, further testified that he came over the track on Saturday night before the wreck; that he did not observe the bad condition of the track, and hence made no report of it. On cross-examination he admitted that he had heard of the bad condition of the track; but that no one had told him at what particular point the track was defective, and having seen other engines run on the track, he supposed that his could also run with safety.

This case shows a train with twelve empty cars being pulled by an engine reversed, that, is, with the pilot next to the cars, and the tender in front, with a number of employes, including the superintendent, riding on the tender of the engine, the rate of speed being estimated by different witnesses to be between thirty and thirty-five miles per hour, over a track with constantly changing grades. The engineer, running his train at a high rate of speed, approached the point where the wreck occurred, at which the defective condition of the track existed, without any attempt to check his engine. We contend that this is clearly a case of willful negligence, amounting to recklessness, and the jury were so justified in finding.

The case of *Arnola* v. *Illinois, etc. R. R. Co.*, 78 Miss. 787, cited by counsel for appellant, has no application here, because in that case it was mere negligence, and passive negligence at that, to a mere licensee. Here,

we have a licensee injured by negligence of the grossest character: First, in permitting the track to remain in the dangerous condition it was shown to be in from Saturday until Monday, and running trains over it during that time; and, second, the negligence of the engineer at the time of the accident.

As to whether appellee was guilty of contributory negligence in getting on the tender under the conditions was a question for the jury, and mere contributory negligence could not defeat recovery where a defendant was guilty of willful, wanton, and gross negligence as in this case. *Brown* v. *Yazoo, etc. R. R. Co.*, 77 Miss. 338; *Magee* v. *Mississippi, etc. R. R. Co.*, 48 South. 723; *Davis* v. *Chicago, etc. R. R. Co.*, 15 A. & E. R. R. Cases, 424.

In the case of *Albion Lumber Co.* v. *De Nobra*, 19 C. C. A. 168, we have a case strikingly like the one at bar, and one on which we rely for affirmance. In the case cited the Albion Lumber Company operated a logging road in connection with a saw mill plant and permitted its employes and other persons to ride upon its train by permission of the foreman. The deceased was on the train and was killed as a result of the train being derailed. No complaint was made on account of the defective condition of the track. The only difference between the case cited and the case at bar is that, in the *Albion case, supra,* the deceased, on the day he was killed, had applied to one Hicks, general superintendent, for employment, and Hicks told De Nobra he would hire him and that he could go to work the following day; that De Nobra boarded the train for the purpose of going after his clothing, at the direction of Hicks, and was killed by the derailment of the train, at a point where the track was not alleged to be defective.

Argued orally by *George P. Money,* for appellant.

Mayes, C. J., delivered the opinion of the court.

The Ingram-Day Lumber Company was engaged in a saw milling business, and in connection therewith operates a logging road. This logging road extended some distance from the mill into the woods, and was used for the sole purpose of hauling logs from the forest to the mill. It is claimed by Harvey that one of the employes of the mill told him, if he would go to the plant at the end of the road, he could get employment in the blacksmith shop shoeing horses. Acting upon this, Harvey went down one morning to the starting point of the road for the purpose of taking passage on the log train, to go where he claims he had been told by this employe that he could get work. On reaching the starting point he met the engineer, one Anderson, and claims to have asked Anderson if he could go out with him, and claims that the engineer told him he could. This is denied by Anderson, and it is clearly shown that Anderson was only the engineer, and had no authority from the mill to give this permission, or employ, or promise employment to, anybody. Before the log train left, the superintendent, one Barrett, came down to take passage also. Barrett states that he told Harvey, before the train left, that he needed no one at the end of the line. Harvey denies this. It is also claimed by Harvey that Barrett permitted him to get on the train. Barrett denies this, and says he did not know Harvey was on the train. However this may be, it distinctly appears from the record that Harvey took passage on this logging train in the furtherance of some purpose of his own in seeking employment, and according to his own testimony he had not been promised any employment by any one who had authority to do so for the mill. In short, it is clear from the testimony that Harvey got on the train and started to the end of the line without being told to get off by anybody, and this was all the invitation or permission given him. He was in the prosecution of his

own purposes at the time, and assumed all risks save that of willful or wanton injury. After the train left, and while going at a rate of speed estimated by those in charge of the train to be from ten to twelve miles an hour, and by Harvey to be thirty or thirty-five miles, it jumped the track and injured Mr. Harvey. Because of this he brings this suit, and in the lower court recovered a judgment, from which the lumber company appeals.

The track seems not to have been in good condition, and this may have occasioned the wreck; but a bad state of repair is the universal condition of logging roads, put down for temporary use, and not intended for passenger traffic. Appellant contends that there is no liability on the part of the mill. If it is conceded that the road was in a bad state of repair, it must be remembered that this will not make the appellant liable to Harvey, even though the injury was the direct result of the bad condition. The road took no passengers; it invited none; it owed to the public no duty, because it was not serving it. The only possible duty it assumed to Harvey was that it do him no willful wrong, and this is but a duty which rests upon all mankind to his fellowman, and has no special or peculiar application to this appellant. When Harvey took passage on this train as he did, he is bound with a knowledge of the character of the road he was taking passage on and assumed the risk. He was not invited on the train; he had no right there. Under these circumstances he could not ask that this road be conducted in a way different from which it was ordinarily run, to the detriment of the business of appellant, in order that his safety might be specially provided for. Nothing in this record indicates that the operatives on this train handled it with such gross negligence as to indicate willfulness or wantonness.

The case of *Illinois Central Railroad Co.* v. *Arnola,* 78 Miss. 787, 29 South. 768, 84 Am. St. Rep. 645, lays

down the rule of liability applicable to this case. In the Arnola case the court says, as to liability to a licensee, that a person is under "no duty except that of not inflicting willful or wanton wrong. A person who, without the invitation or inducement of the owner, goes upon the land or premises of such owner, takes such permission with all the dangers attending it. A master is not responsible to a servant for the negligence of a fellow-servant; *a fortiori* he is not responsible to a stranger for such negligence. The appellee, in going upon the private lands of the appellant, took upon herself all the risks of such entry. The damage suffered by her is not an injury for which an action lies." What is said above applies to this case. This lumber company had constructed this road for the furtherance of its own business. The road is its private property, and as much exempt under the law from intrusion or invasion of strangers as if it consisted of private inclosed land.

Counsel for appellee cite with great confidence the case of *Albion Lumber Co.* v. *De Nobra,* 72 Fed. 739, 19 C. C. A. 168. An inspection of the above case easily distinguishes it from the case now on trial. In the De Nobra case it was shown that one Hickey had general charge of the road and logging camps, and had authority to employ men to work for the company; that the injured party applied to him for employment on the day of the accident, and was engaged to work for the defendant. It was shown that Hickey inquired if deceased had a blanket, and on being informed that he had blankets at a place called Big River Hotel, several miles distant, told him to get on the cars and go down there and get the blanket, and come up the next day and start to work. Under this promise of employment, and at the request of the general manager, in furtherance of the business which he represented, the party took passage, and was killed by the negligence of the company, and of course

it was liable.    The above statement of the De Nobra.
case shows how widely these cases differ in their facts.
*It is our judgment that no cause of action is shown*
*by the facts of this case, and it is reversed and remanded.*